## PEABODY et al. v. BURGESS.

(District Court, D. Massachusetts. March 2, 1926.)

No. 2155.

1. **Bankruptcy** ⊙⟹303(3).

Evidence *held* to show that member of bankrupt partnership agreed to give his wife security for her liability on guaranty of his and firm debts when guaranty was executed.

2. **Fraudulent conveyances** ⊙⟹64(1)—To recover under fraudulent conveyance, conveyance must have been made to defraud all creditors, and received without consideration or with knowledge of fraud.

To recover under fraudulent conveyance, conveyance must have been made with intent to defraud all creditors, and must have been received either without consideration or with knowledge of fraudulent intent.

3. **Bankruptcy** ⊙⟹181—Payment to wife of partner in bankrupt partnership, liable on her guaranty of husband's and firm debts, held not fraudulent conveyance.

Transfer to wife of partner in bankrupt partnership of proceeds of sale of notes, when she was liable on her guaranty of husband's and firm debts, *held* not a fraudulent conveyance, even if notes had not previously been set aside for her to secure her liability on guaranty as alleged; payment not being made to a stranger or volunteer.

4. **Bankruptcy** ⊙⟹303(3).

Evidence *held* insufficient to show that member of bankrupt partnership paid large sum to wife to defraud his or partnership creditors.

5. **Bankruptcy** ⊙⟹181—Agreement to give wife of partner in bankrupt partnership security for her guaranty of husband's and partnership debts held supported by consideration.

Agreement to give wife of partner in bankrupt partnership security for her guaranty of husband's and partnership debts *held* supported by consideration, as against contention that subsequent payment to her of proceeds of corporate notes claimed to have been set aside as security was a fraudulent conveyance.

In Equity. Suit by W. Rodman Peabody and another, trustees in bankruptcy for Burgess, Lang & Co., bankrupts, against Ethel M. Burgess. Bill dismissed.

Hollis R. Bailey and B. A. Brickley, both of Boston, Mass., for plaintiff.

Gay Gleason and Sawyer, Hardy, Stone & Morrison, all of Boston, Mass., for defendant.

MORTON, District Judge. This is a suit to recover $6,000 paid to the defendant by one Whitaker, by check, on November 28, 1921. The bill alleges that the transaction was both a preference and a fraudulent conveyance, but only the latter ground is now insisted on. The facts are as follows:

[1] Burgess, Lang & Co. were a firm of stockbrokers, who became bankrupt in March, 1922; the plaintiffs are their trustees. Wm. H. Burgess was one of the partners. Ethel M. Burgess, the defendant, is his wife. Burgess, Lang & Co. began to find things difficult—"were up against it"—as Mr. Burgess testified, as early as June, 1921. On August 11th of that year Mr. Burgess obtained from Mrs. Burgess a written guaranty, guaranteeing payment of firm loans and his personal loans at the Liberty Trust Company to the amount of $25,000. He and she both testified in this proceeding that at that time he promised her security against her liability, mentioning the notes of the Milford Power & Light Company, which, according to his testimony, were later transferred to her. On August 12th the firm wrote to her, agreeing to furnish security on demand. I have no doubt that this letter was in pursuance of the understanding under which the guaranty was given and is to be regarded as contemporaneous with it.

Burgess, Lang & Co., as a firm, owned $16,000 par value of the notes of said Milford Power & Light Company; Mrs. Lang, wife of one of the partners, owned $7,000; Burgess owned $6,000. The Milford Company was at that time in a receivership in this court; L. K. Clark, Esq., being the receiver, and Judge Anderson the directing judge. As the result of negotiations during the fall of 1921, all the notes referred to were sold on November 28th for par, in cash. The check for the notes which had been owned by Mr. Burgess was given by Whitaker. It was taken in the name of Mrs. Burgess, and was deposited by her husband to her account on that date. Mr. Burgess testifies that before Labor Day, 1921, he had put this $6,000 of Milford notes in an envelope marked with his wife's name, in a box to which he had access in the firm's vault, and that they remained there until delivered by him to Whitaker. He and she both testify that she was informed that this had been done. Of the money passed to her account on November 28th, she immediately turned over $2,500 to her husband, and within a fortnight $1,000 more to him. She testifies that she paid $1,000 for taxes on the Lexington house, which she owned, and used the rest of the money in pay-

ment of household bills for which her husband was liable. By January the money had all been spent in this way; none of it appears to have been invested.

In connection with the proof of the notes in the Milford Company receivership proceedings, Mr. Burgess swore that he owned them, and he made a statement to that effect in a letter in connection with the sale of the notes, after the time when, as he now says, the notes had been turned over to his wife and were in the box, in the envelope marked with her name. It is argued by the plaintiff that at one time or the other he has sworn falsely, and upon the face of the record that is true. It is, however, clear enough that Mrs. Burgess paid little or no attention to business affairs. She left those entirely to her husband's care. The houses where they lived, both at Lexington and at Buzzard's Bay, were her property. It seems not unlikely that, when she was asked to sign such a substantial guaranty, there should have been some talk about her protection. It was reasonable that she should have it, and the letter from the firm the next day shows that the point was considered. Whether the notes were specially referred to is more doubtful, but that all parties interested understood that she was to be secured upon her guaranty I entertain no doubt.

On November 28th the firm was insolvent; but it seems to have been by no means hopelessly so. Active conferences between the partners, and between the firm and various banks, were taking place during the last part of December, 1921, and the first part of January following. An agreement for an extension came, on the testimony of Mr. Burgess, very near to going through. But market conditions continued unfavorable to the firm's interest, the companies in which it was interested became involved in financial difficulties because the firm was unable to support them, and this in turn made the position of the firm still more difficult. The petition in bankruptcy was filed against it and the partners on March 18, 1922, and adjudication followed.

[2, 3] It is essential to recovery under a fraudulent conveyance that the conveyance shall have been made with an intent to defraud all creditors, and shall have been received, either without consideration or with knowledge of the fraudulent intent. If the notes were in fact put aside for Mrs. Burgess within a few weeks after her guaranty was given, there is no doubt that she is entitled to hold both them and the proceeds. Whether the uncorroborated testimony of the defendant and her husband shall be accepted as es-

tablishing that fact is a close question. But it is clear that on November 28th, when she received this money, she was liable under the guaranty—under which she eventually had to pay the full amount. The money was therefore turned over by Mr. Burgess, not to a stranger or a volunteer, but to a person to whom the firm was under a heavy, although as yet a contingent, obligation. Such a transfer may or may not be a preference, but it lacks nearly all the characteristics of a fraudulent conveyance.

[4] It is said for the trustees that there is no convincing proof that the payment of November 28th had any relation to the guaranty; that, if the money had been turned over to her as security, she would naturally have kept it, instead of spending it as she did; and that her conduct with reference to it shows that what her husband had in mind was to give her some money, in order to get it out of the reach of his creditors. On the other hand, her action in giving back almost immediately $3,500 to her husband, who put $2,500 of it into one of the companies in which Burgess, Lang & Co. were interested, is far from indicating a fraudulent intent to conceal the $6,000. It rather indicates an expectation on his part that the firm would pull through. On his testimony the $6,000 was collateral on the guaranty in substitution for the Milford notes, and as a matter of strict law Mrs. Burgess had no right to use it when she did. She had no accurate understanding of the situation. He probably felt that, if the firm pulled through, the matter would be all right, and, if it did not, she would have to pay, as she later did, the whole amount of her guaranty. Twenty-five thousand dollars of Mrs. Burgess's money has gone to the creditors of the bankrupts. On the whole evidence, I am not satisfied that the $6,000 was either paid or received with an intent on the part of the parties to the transaction to defraud the creditors of her husband, or of Burgess, Lang & Co.

[5] The plaintiffs further suggested that the existence of the guaranty, and Mrs. Burgess's contingent liability thereon, at the time when she received the money, did not furnish any consideration for her receiving it, that the payment to her was therefore a voluntary payment, and that voluntary payments made by an insolvent are presumptively fraudulent and recoverable for the benefit of his creditors, without any fraudulent intent on the part of the transferee. The evidence, however, clearly shows an understanding that Mrs. Burgess should receive security against her guaranty. The case is not one in which

a guarantor, who was not promised security at the time of the guaranty, subsequently received security.

Bill dismissed, with costs.